211 So.2d 796

**William O. ROGERS**

v.

**FIRST NATIONAL BANK OF BIRMINGHAM.**

**6 Div. 440.**

Supreme Court of Alabama.

June 13, 1968.

Weir & Shannon, Birmingham, for appellant.

Cabaniss, Johnston, Gardner & Clark and Drayton T. Scott, Birmingham, for appellee.

SIMPSON, Justice.

The appellant's father, O. H. Rogers, borrowed $25,000 from the First National Bank of Birmingham on January 24, 1957. Appellant endorsed this note and at the same time executed an assignment to the bank of a life insurance policy on the life of his father, which was owned by appellant, such policy being issued by Protective Life Insurance Company bearing the number 196905. The policy had a face value of $50,000.

Thereafter the $25,000 note was reduced by the payment on April 22, 1957, of $13,000, leaving a balance due on the original indebtedness of $12,000. On July 29, 1957, O. H. Rogers signed a new note in the amount of $12,000, which was also endorsed by appellant. On January 28, 1958, O. H. Rogers executed another note in the amount of $12,000, which does not bear the endorsement of appellant but which

note indicated on its face that the aforesaid policy in the amount of $50,000 was pledged to the bank to secure the note. It would appear that the failure of the appellant to endorse this note was an oversight, as will subsequently appear.

On July 21, 1960, O. H. Rogers executed an additional note in the amount of $15,-123.21 to the bank, which was endorsed by appellant, and which also showed on its face that the aforesaid policy was pledged to secure the same. On the same date—July 21, 1960—O. H. Rogers signed a note in the amount of $45,000, which also showed on its face that the aforesaid policy (along with other policies) was pledged as collateral. This note was not endorsed by appellant. On that date, however, the appellant wrote the following letter to the bank:

"I, the undersigned William O. Rogers, have today endorsed a note made by Oliver H. Rogers, which note is being signed as maker by my father, Oliver H. Rogers, and which note bears even date herewith, being for the principal sum of $15,123.21, and which note is an extension of a former note signed by my father in the amount of $12,000, dated January 28, 1958, which note I had agreed to endorse but inadvertently did not do so. The new note includes additional monies advanced by you.

"Three other notes held by you made by my father dated, respectively, April 9, 1958, March 5, 1958, and March 17, 1958, have been consolidated into a new and consolidated extension note of even date herewith in the amount of $45,000, which has been signed contemporaneously herewith by my father.

"I am the owner of a life insurance policy on my father's life in the face value of $50,000, being Protective Life Insurance Company policy 196905. This policy with other policies owned by my father are described as and are collateral security to both of said notes, and I hereby acknowledge that the pledge of my said life insurance policy secures not only the said new note for $15,123.21, but also the said consolidated and extension note for $45,000.

/s/ "William O. Rogers"

Thereafter on February 17, 1961, the appellant addressed the following letter to the bank:

"With reference to indebtedness of the undersigned and Oliver H. Rogers, which was the subject of my letter to you dated July 21, 1960.

"It now becomes necessary for O. H. Rogers to borrow the additional sum of $2,803.05 from you to pay premiums on the insurance policy referred to in said letter.

"This is to acknowledge that in addition to securing the repayment of the $45,000.00 of indebtedness of my father, Oliver H. Rogers, *which was consolidated and extended at my request at the time of my giving said letter*, and the $15,123.-21 note referred to therein, the insurance policy on my father's life, owned by me, referred to in said letter, shall also secure the payment of said new note in the amount of $18,752.43, (which note I am endorsing) and also any and all future indebtednesses which may be created between either my father or me with you, provided that any new note made by my father is endorsed by me, and shall show on its face that said policy is pledged to the payment thereof. Said last mentioned amount includes interest figured to January 4, 1962." (Emphasis added.)

/s/ "William O. Rogers"

From the record before us, which consists only of documents, it appears that the $45,-000 note was never paid, nor extended from July 21, 1960. The senior Mr. Rogers continued to borrow money from the bank from time to time, executing various notes. One such note dated January 24, 1963, in

the amount of $25,676.00 was signed by O. H. Rogers, and endorsed by appellant William O. Rogers, and also showed on its face that the policy in question was pledged as collateral security.

▆▆▆ Thereafter on June 18, 1963, Mr. O. H. Rogers died. Protective Life Insurance Company paid the face amount of the $50,000 policy to the First National Bank. Appellant William O. Rogers made demand on the bank to remit to him $24,324, being the difference between the $25,676 note and the $50,000 face amount of the policy. It is appellant's contention that the $50,000 policy did not secure the $45,000 note and that the bank had no right to apply any of the proceeds of that policy to the reduction of that note. The only basis for this contention on the part of appellant is that there was no consideration for the promise made by him to the bank as is expressed in the two letters set out above. The appellant is wrong. As noted in 17 Am.Jur. 2d, Contracts, § 115: "There seems to be no dissent from the proposition that a promise to forbear from suit is a sufficient consideration for the promise of the debtor or of a third person. * * * A promise to forbear may be implied from the conduct of the parties and the nature of the transaction". From the evidence before us it is apparent that the bank extended and consolidated the debts owed to it by appellant's father in the $45,000 note at the request of appellant, in exchange for the pledge by appellant of the $50,000 policy, and the appellant so stated in his letter of July 21, 1960, the same day the $45,000 note was executed. A promise to give further time for the payment of a debt, if followed by actual forbearance for a time, is a valid consideration for a promise to pay that debt by a person other than the debtor. It necessarily follows then that a promise by one to pledge security for a loan extended at his request is likewise supported by consideration. See anno. 78 A.L.R.2d 1414 and 114 A.L.R. 1204. In accord is Martin v. Black's Executors, 20 Ala. 309 (1852).

The documents before us (and the record consists of no more than the notes, letters, and a stipulation that this constitutes the evidence) indicate that on July 21, 1960, the appellant's father was indebted to the First National Bank of Birmingham in the amount of $45,000, which was evidenced by three notes aggregating this amount, all of which notes were due. At that time, at the request of the appellant, according to his letter of February 17, 1961, the bank consolidated and extended that debt, O. H. Rogers executing a new $45,000 note. At this time the appellant acknowledged "that the pledge of my said life insurance policy secures * * * the said consolidated and extension note for $45,000". Appellant says that this promise was not supported by consideration. Tested by the classic formula, we inquire: Did the First National Bank suffer a legal detriment in exchange for the promise made by appellant? We must conclude that it did. At the time the letter of appellant was addressed to the bank, the bank had a claim against O. H. Rogers evidenced by three notes which were due. It relinquished any right to proceed to collect the amount due under these notes by extending the debt as evidenced by the new consolidated note. This action was taken in his own words "at the request" of appellant. We conclude that the promise of appellant to pledge as collateral security the $50,000 policy of life insurance is supported by consideration. The trial court so held. Its judgment is therefore affirmed.

Affirmed.

LIVINGSTON, C. J., and COLEMAN and KOHN, JJ., concur.