The defendant, William B. Roberts, appeals from a summary judgment entered by the trial court in favor of the plaintiff, Pearce Construction Company, Inc. ("Pearce") in its declaratory judgment action. The issues for our review are: 1) whether Pearce has standing to bring an action to determine its rights and liabilities under a contract between Roberts and Madison Square Townhomes ("MST"); and 2) whether the trial court erred in holding that that contract was invalid because a) Roberts did not provide sufficient consideration, or b) an order of the judge in the bankruptcy proceedings of Roberts's company served to nullify the condition precedent to the contract.
William Roberts was the president and a stockholder of R L Excavating, Inc. In 1985, R L entered into a contract with MST, whereby R L agreed for $250,000 to prepare a site for the construction of condominiums. R L completed the work in 1986, but as of February 1987, $39,500 of the contract price was still outstanding. Because MST was having financial difficulties, and thus could not meet its obligation to R L, the president of MST[1] agreed to sell to Roberts one of the condominiums on the condition that Roberts would not be obligated to pay the $57,500 purchase price until 90 days after the $39,500 had been paid by MST to R L. This contract was reduced to writing, and, after paying $500 in earnest money, Roberts moved into the condominium. The contract did not obligate Roberts to pay any rent for his use of the condominium.
In 1989, MST executed to Pearce a deed in lieu of foreclosure. In return for a fee simple title to the premises, which include the specific condominium in controversy, Pearce agreed to: 1) release MST from its obligation on the original bank mortgage, which had been assigned to Pearce; 2) release MST from its obligation on the mortgage taken by Pearce to assure payment of the construction costs; and 3) release MST from an additional construction debt of approximately $20,000. Pearce also agreed to release the guarantors of personal liability on the bank mortgage, provided that the guarantors truthfully disclosed the future debts of MST. The debt to R 
L was disclosed on an attachment to the contract entitled Exhibit "D," which provided:
 "Potential liens and costs that may arise that Madison Square Townhouses would have to pay:
". . . .
"11. R L Excavating $42,000"[2]
This agreement clearly contemplates that MST, not Pearce, would be responsible for the payment of the debt to R L.
After receiving the deed to the premises, Pearce asked Roberts to either pay the purchase price of $57,500 or vacate the premises; Roberts refused. Pearce then brought an eviction action against Roberts. The trial court initially entered a judgment granting the relief sought by Pearce, but it later set aside that judgment.
Just before MST executed to Pearce the deed in lieu of foreclosure, R L filed a Chapter 11 bankruptcy petition, which was thereafter converted to a Chapter 7 proceeding. In June 1991, Pearce filed in the bankruptcy court a motion to require the trustee of R L to abandon the debt owed to R L by MST. In that motion, Pearce alleged that to the best of its knowledge MST was no longer doing business, and that the debt was therefore uncollectable. The bankruptcy judge granted that motion; neither R L nor Roberts moved to set the ruling aside.
Pearce then brought this action, claiming breach of contract and seeking specific performance; Pearce later amended its complaint *Page 1011 
to ask, under Ala. Code 1975, § 6-6-220 et seq., for a declaration of its rights to the disputed condominium. After considering the pleadings, the affidavits, and the arguments of the parties, the trial court entered a summary judgment in favor of Pearce. The trial court's order, in pertinent part, reads:
 "It is therefore ORDERED, ADJUDGED AND DECREED by the court as follows:
 "1. That the condition precedent to the obligation of the defendant to purchase the condominium in question (i.e. payment of $39,500 by [MST] to [R L]) has been rendered impossible of performance by virtue of the fact that [MST] is defunct; that [R L] has been declared bankrupt; and, that the obligation has been abandoned by the bankruptcy court as 'of inconsequential value and benefit to the estate.' To accept the defendant's position would allow him to live in the premises indefinitely without paying rent or purchasing the condominium. Also, the condition is not based upon any consideration which flows from the defendant to the obligor under the contract. It is therefore ORDERED that this condition in the contract requiring payment of $39,500 by MST to R L is hereby declared void and of no further force and effect.
 "2. That effective this date, the defendant shall have 90 days to purchase the condominium in question in accordance with the contract or to vacate the premises. Upon the failure of the defendant to purchase the condominium within 90 days, this contract shall be of no further force and effect and shall be deemed terminated. In the event that the defendant remains in possession of the condominium after 90 days, he shall become liable for the reasonable rental value of that unit."
Roberts argues that Pearce lacked standing to bring this action because MST had not properly assigned the sales contract to Pearce in accordance with Ala. Code 1975, § 8-5-20. Although this argument may have some validity with respect to Pearce's breach of contract and specific performance counts, Pearce also sought declaratory relief. Section 6-6-221 of the "Declaratory Judgments" article provides, "[T]his article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations and is to be liberally construed and administered." Also, § 6-6-223 provides:
 "Any person interested under a deed, will, written contract or other writings constituting a contract or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."
(Emphasis added.) Finally, § 6-6-226 states that "[t]he enumeration in section 6-6-223 . . . does not limit or restrict the exercise of the general powers conferred in section 6-6-222 in any proceeding where declaratory relief is sought in which a judgment will terminate the controversy or remove an uncertainty."
Here, Pearce gave valuable consideration in exchange for a fee simple title to the premises owned by MST. Also, in the agreement Pearce declined to assume the debt owed by MST to R L. Pearce's claim to the property is contested by Roberts, who is a party to a written contract of sale of the disputed condominium. Pearce's rights to the condominium are clearly affected by the Roberts-MST contract, and, given the broad remedial scope of the Declaratory Judgment Act, we hold that Pearce has standing to bring an action to determine its rights to the condominium.
This Court also concludes that the trial court did not err in holding that the contract between Roberts and MST was not supported by valid consideration flowing from Roberts to MST. It is fundamental that the president of a corporation has no authority to bind the corporation merely by virtue of his office; any such authority must come from the charter or bylaws of the corporation, or from authority delegated to him by the board of directors of the corporation. *Page 1012 Belcher v. Birmingham Trust Nat'l Bank, 348 F. Supp. 61
(N.D.Ala. 1968); McMillan v. Dozier, 257 Ala. 435, 59 So.2d 563
(1952). Here, the consideration underlying the condition precedent in the Roberts-MST contract was presumably R L's forbearance from suing on the matured debt owed to it by MST. An agreement to forbear from prosecuting a claim does normally constitute valid consideration. Rogers v. First Nat'l Bank ofBirmingham, 282 Ala. 379, 211 So.2d 796 (1968). Here, however, there is no evidence that R L, through its board of directors or otherwise, authorized Roberts to so utilize a property right of the corporation. Absent such authority, Roberts may not use the property of the corporation to further his self-interests. See C.J.S. Corporations § 494 (1990). This rule holds true even in the context of close corporations. See Cole Real EstateCorp. v. Peoples Bank Trust Co., 160 Ind. App. 88,310 N.E.2d 275 (1974). Moreover, Roberts himself gave no consideration, except the $500 earnest money, for the rent-free occupation of the premises. Therefore, the condition precedent was not supported by valid consideration.
As part of its reasoning in entering the summary judgment for Pearce, the trial court noted that "the obligation has been abandoned by the bankruptcy court." When the bankruptcy judge ordered the trustee of the R L estate to abandon R L's right to collect the MST debt, that debt did not cease to exist in a legal sense. Rather, when the trustee is ordered to abandon property (here, an action for breach of contract) pursuant to 11 U.S.C. § 554(b), the property is not "extinguished"; it merely reverts to the debtor: the bankruptcy court loses all jurisdiction over the property. Thereafter, any interested party may pursue its rights to the property under applicable state law. In re Tarpley, 4 B.R. 145
(M.D.Tenn. 1980); In re Gassaway, 28 B.R. 842 (N.D.Miss. 1983). Therefore, R L may bring an action against MST to recover the $39,500 debt. However, this does not change the fact that Roberts provided no consideration for MST's promise to postpone the closing until 90 days after the debt was paid. Hence, even if the trial court's order can be read as misstating the legal effect of the bankruptcy judge's order, any such misstatement is harmless error.
The summary judgment for Pearce is hereby affirmed.[3]
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] The president of MST is David Lanier: Lanier also is a stockholder in R L; in fact, the "L" stands for Lanier.
[2] The parties do not explain why the $39,500 debt is represented as $42,000 in the contract.
[3] Roberts also argues that Pearce failed to include MST as a necessary party, as required by Ala. Code 1975, § 6-6-227, and A.R.Civ.P. 19. This argument is flawed, for MST no longer has any legal interest in the condominium currently occupied by Roberts. MST's sole interest in the controversy lies in the fact that the bankruptcy judge's order did not nullify its $39,500 liability to R L. This does not affect the validity of the contract between MST and Roberts, and therefore MST is not a necessary party.